UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

S.K.; ROXANNE J. KING; and BRIAN KING,

    Plaintiffs,

v.                          Case No. 6:20-cv-2167-RBD-LRH

SCHOOL BOARD OF ORANGE COUNTY, FLORIDA; ROBERT CLINE; JOHN W. MINA; ASPIRE HEALTH PARTNERS, INC.,

    Defendants.
_____

## ORDER

Defendants School Board of Orange County, Florida ("**School Board**") and Aspire Health Partners, Inc. ("**Aspire**") each move to dismiss Plaintiffs' amended complaint (Doc. 24 ("**Complaint**")). (Docs. 34, 35.) Plaintiffs responded. (Docs. 44, 45.) On review, the School Board's motion is denied and Aspire's motion is granted in part.

### I.    BACKGROUND[1]

Plaintiff S.K., a minor, was diagnosed with autism spectrum disorder, separation anxiety, and Attention Deficit and Hyperactivity Disorder ("**ADHD**"). (Doc. 24, ¶ 16.) In March 2017, she was nine years old and attending Lovell Elementary School ("**Lovell**"), which is operated by the School Board. (*Id.* ¶¶ 4, 7, 21.) S.K.'s autism made her susceptible

---

[1] The facts in the Complaint (Doc. 24) are taken as true and construed in the light most favorable to Plaintiffs. *See Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2015).

to environmental stressors, so she required an Individual Education Plan ("**IEP**"). (*Id.* ¶ 10.) Samantha Storch, an employee of Aspire, worked with S.K. on her IEP. (*Id.*) Under the IEP, S.K. would sit with her father Plaintiff Brian King and an exceptional education teacher in an empty classroom for fifteen minutes before school started to allow her to decompress from separation anxiety symptoms. (*Id.* ¶¶ 5, 19.) But it was an imperfect solution.

In March 2017, S.K.'s medication was changed, leading to more temper tantrums in this transition time. (*Id.* ¶ 20.) That same month, Ms. Storch called Mr. King informing him that S.K. had a tantrum after he left and said she wanted to kill herself. (*Id.* ¶ 21.) Ms. Storch let him know a Lovell employee Jennifer Rojas had called the mental health hotline and they were told to discuss the option of a voluntary Baker Act with him. (*Id.* ¶¶ 8, 21.) Mr. King said he didn't want to Baker Act S.K. because she made comments like that without meaning it, like many children with autism do. (*Id.* ¶ 22.) And he conveyed that S.K. had recently changed medication. (*Id.*) S.K.'s medication was then readjusted. (*Id.* ¶¶ 23, 25.)

On March 30, 2017, Mr. King dropped S.K. off at the transition classroom with a teacher. (*Id.* ¶ 24.) Shortly after Mr. King left, Ms. Rojas called Mr. King and S.K.'s mother Plaintiff Roxanne J. King, letting them know S.K. was having a tantrum. (*Id.* ¶ 26.) But there was a standardized test that day, so Ms. Rojas said she didn't want the Kings to pick S.K. up. (*Id.*) Instead, Ms. Rojas suggested she call a police officer to come calm S.K. down and make her feel safe as Ms. Rojas's husband was a police officer. (*Id.* ¶ 27.) Mr. King said he didn't think it was a good idea, especially after the Baker Act scenario. (*Id.*

¶ 28.) Ms. Rojas assured Mr. King the officer would not Baker Act S.K. without her parents' consent and no negative consequences would come to S.K. (*Id.* ¶¶ 29–30.) So the Kings agreed to allow a police officer to speak to S.K. (*Id.* ¶ 31.)

Ms. Rojas requested an officer come to Lovell. (*Id.* ¶ 32.) Defendant Robert Cline, an officer from the Orange County Sheriff's Office, arrived—it did not go well. (*Id.* ¶ 33.) Officer Cline grabbed S.K. by the arms and when S.K. tried to pull away, he became angry. (*Id.* ¶¶ 33–34.) After learning of the incident, the Kings immediately went to Lovell and were told by Ms. Rojas, "The officer is pissed." (*Id.* ¶¶ 35–37.) Officer Cline, visibly irritated, spoke with the Kings. (*Id.* ¶¶ 38, 39.) Mrs. King told Officer Cline S.K. was on the autism spectrum and had ADHD and anxiety disorder. (*Id.* ¶ 40.) Angry, Officer Cline said he could charge S.K. with a felony for the way she acted—but he was going to Baker Act her instead. (*Id.* ¶ 41.) The Kings asked to take S.K. with them because she was not a threat to herself, having made no statements of self-harm that day. (*Id.* ¶ 42.) Despite the parents' pleas, Officer Cline curtly said, "I have the authority and I'm taking her." (*Id.* ¶¶ 43–45.)

Without allowing the Kings to see or speak to S.K., Officer Cline put S.K. in the back of a police car, locked her inside, and transported her to a mental health detention center owned by Aspire. (*Id.* ¶ 46.) He initiated an involuntary Baker Act detention of S.K. at 9:30 a.m. (*Id.*) The Kings immediately went to the detention center to request S.K.'s release. (*Id.* ¶ 47.) The staff told them S.K. could not be released until she was seen by a doctor since Officer Cline had initiated the Baker Act detention. (*Id.* ¶ 48.) Over the next twenty-four hours, the Kings repeatedly called the detention center requesting S.K.'s

release. (*Id.* ¶ 49.) Still, S.K. was held overnight. (*Id.* ¶ 51.) The morning of March 31, 2017, the Kings demanded S.K.'s release threatening to make a police report for kidnapping. (*Id.* ¶ 52.) After the call, a doctor evaluated S.K. and determined she was not a risk to herself. (*Id.* ¶ 53.) Finally, S.K. was released. (*Id.*)

When the Kings were reunited with S.K., they observed fresh bruises on S.K.'s arms, back, and buttocks. (*Id.* ¶¶ 54, 56.) S.K. said Officer Cline hurt her. (*Id.* ¶ 55.) S.K. was treated for these injuries at Nemours Children's Urgent Care. (*Id.* ¶ 57.)

The Kings filed a formal complaint with internal affairs for the Orange County Sheriff's Office. (*Id.* ¶¶ 65–66.) But the Sheriff's Office determined Officer Cline did nothing wrong. (*Id.* ¶ 67.) The report noted both Officer Cline and Lovell staff members had physically restrained S.K. during the incident—and S.K. was cooperative when Officer Cline arrived. (*Id.* ¶¶ 68–70.)

Contending S.K. suffered physical and emotional damages, Plaintiffs sued the School Board, Officer Cline, John W. Mina in his capacity as the Sheriff of Orange County, Florida, and Aspire.[2] (Doc. 24.) They bring these claims against the School Board: negligence, negligent infliction of emotional distress, and a violation of the Americans with Disabilities Act ("**ADA**") (*Id.* ¶¶ 76–98.) The School Board moves to dismiss the ADA claim and strike the heightened duty alleged in the negligence claim. (Doc. 34.) Plaintiffs sue Aspire for false imprisonment and negligence. (Doc. 24, ¶¶ 161–78.) Aspire moves to dismiss both claims. (Doc. 35.) With Plaintiffs' responses (Docs. 44, 45), the

---

[2] Defendants Cline and John W. Mina answered the Complaint. (Docs. 36, 38.)

matter is ripe.

## II.   LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." A complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint "does not need detailed factual allegations," but "requires more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## III.   ANALYSIS

### A.   Count I: Negligence (School Board)

Plaintiffs sue the School Board for negligence alleging it owed S.K. "a heightened duty of care." (Doc. 24, ¶¶ 77.) The School Board moves to strike this allegation, arguing under Florida law it owes a general duty of care to its students unless a special relationship is proven. (Doc. 34, pp. 11–12.) First, there is "a special relationship between schools and their students." *Limones v. Sch. Dist. Lee Cnty.*, 161 So. 3d 384, 390 (Fla. 2015). "This special relationship requires a school to reasonably supervise its students during all activities that are subject to the control of the school . . . ." *Id.* But the specific duties required of the school depend on the circumstances. *See id.* For example, schools owe student athletes a duty to adequately instruct and provide proper equipment. *Id.*

Plaintiffs allege the School Board owed S.K. a heighted duty of care because S.K.

-5-

had disabilities that required a specialized education plan, including services not provided to the general student population. (Doc. 44, p. 4; *see also* Doc. 1-1, ¶¶ 16–17, 77.) As this could plausibly establish heightened duties, the Court will not strike the allegation.

### B.   Count III: Violation of the ADA (School Board)

Plaintiffs also allege the School Board violated Title II of the ADA. (Doc. 24, ¶¶ 88–98.) The School Board argues Plaintiffs have not exhausted their administrative requirements and have not established a Title II claim. (Doc. 34, pp. 3–11.)

#### 1.   Administrative Requirement

The School Board contends Plaintiffs must exhaust administrative requirements laid out in the Individuals with Disabilities Education Act ("**IDEA**") before bringing their ADA claim. (Doc. 34, pp. 3–8.) Plaintiffs respond their claim doesn't require this exhaustion. (Doc. 44, pp. 2–3.)

The IDEA "offers federal funds to States in exchange for a commitment: to furnish a 'free appropriate public education'—more concisely known as FAPE—to all children with certain physical or intellectual disabilities." *Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 748 (2017). But the IDEA is not the only statute that protects children with disabilities. *Id.* at 749. Title II of the ADA also serves that purpose: prohibiting any public entity from discriminating based on disability. *Id.* The IDEA requires a plaintiff to exhaust the IDEA's administrative procedures before suing under the ADA only when "her suit seeks relief that is also available under the IDEA." *Id.* at 752 (cleaned up).

So what's available under the IDEA? Relief from the denial of a FAPE. *Id.* To

determine whether an action seeks this relief, "a court should look to the substance, or gravamen, of the plaintiff's complaint." *Id.* Guiding this determination are two questions. First, "could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library?" *Id.* at 756. "And second, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance?" *Id.* If the answer to both questions is yes, the complaint is likely not seeking relief for the denial of FAPE. *Id.*

Here, Plaintiffs allege the School Board discriminated against S.K. and other children with disabilities by failing "to provide proper policies" or failing "to carry out and ensure adherence to policies related to risk assessment and police intervention with children with developmental disabilities." (Doc. 24, ¶ 93.) Could Plaintiffs' have brought this claim about another public facility? Yes. As Plaintiffs pose in their response, they could have brought this claim against a public library alleging its risk assessment policies related to requests for police intervention have a discriminatory impact on patrons with disabilities. (Doc. 44, p. 2); *cf. Dubrow v. Cobb Cnty. Sch. Dist.*, 887 F.3d 1182, 1190 (11th Cir. 2018). Could an adult at the school bring the same grievance? Yes. Although less likely, an adult, such as a teacher, could allege the School Board had discriminatory policies that improperly involved the police based on the adults' disabilities.

The gravamen of Plaintiffs' Complaint is that the School Board discriminated based on disability by allowing the improper intervention of the police. (*See* Doc. 24.) This is clear from the factual allegations centering on the physical injuries S.K. suffered, rather than the adequacy of S.K.'s education. (*See, e.g., id.* ¶¶ 54–57); *see N.R. v. Sch. Bd. Okaloosa*

*Cnty., Fla.*, 418 F. Supp. 3d 957, 994 (N.D. Fla. 2019). While Plaintiffs allege the education of S.K. and other children with disabilities suffered because of the discrimination, the crux of the claim is that these children were treated differently, specifically through the use of police intervention, because of their disabilities. (Doc. 24, ¶¶ 93–96). This is distinct from being deprived of a FAPE. *See S.V.S. v. Broward Cnty. Pub. Schs.*, No. 18-62413-CIV-DIMITROULEAS, 2019 WL 10092978, at *5 (S.D. Fla. Jan. 28, 2019). So Plaintiffs need not meet the administrative requirements under the IDEA for their ADA claim.

    2.    **Title II Claim**

The School Board also argues Plaintiffs have failed to establish a claim under Title II of the ADA. (Doc. 34, pp. 8–10.) To state such a claim, a plaintiff must allege: (1) she "is a qualified individual with a disability; (2) she "was excluded from participation in or . . . denied the benefits of the services, programs, or activities of a public entity or otherwise discriminated against by such entity"; and (3) "by reason of such disability." *Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir. 2001) (cleaned up). The School Board contends Plaintiffs failed to plead the third element because the police intervention resulted from S.K.'s disruptive behavior, not her disability. (Doc. 34, pp. 9–10.) In support, the School Board cites a case resolved at the summary judgment stage. (*Id.*); *see T.W. ex rel. Wilson v. Sch. Bd. Seminole Cnty., Fla.*, 610 F.3d 588, 604–05 (11th Cir. 2010). The School Board's argument is premature. At the pleading stage, Plaintiffs have sufficiently alleged S.K. was discriminated against by reason of her disabilities. (*See* Doc. 24, ¶¶ 93–96); *see also Lapham v. Fla. Fish & Wildlife Conservation Comm'n*, No. 5:19-cv-579-Oc-34-PRL, 2020 WL 5768728, at *3 (M.D. Fla. Aug. 21, 2020), *adopted by* 2020 WL 5759170 (M.D. Fla. Sept. 28, 2020).

### 3. Immunity

Next the School Board argues Plaintiffs' ADA claim should be dismissed because it cannot be held liable for failing to have a specific policy. (Doc. 34, pp. 10–11.) It cites cases on governmental *tort* liability.[3] (*See id.*) So it's not clear how this applies to an ADA claim. And Title II of the ADA abrogates states' immunity as it applies to the fundamental right of access of public facilities. *See Tennessee v. Lane*, 541 U.S. 509, 533–34(2004); *United States v. Georgia*, 546 U.S. 151, 159 (2006). As Plaintiffs allege S.K. was denied access to a public facility because of disability discrimination, the School Board is not immune from liability under Title II of the ADA based on the face of the Complaint. (*See* Doc. 24, ¶¶ 93, 94, 96); *see also Ass'n for Disabled Americans, Inc. v. Fla. Int'l Univ.*, 405 F.3d 954, 959 (11th Cir. 2005). But the School Board can raise its immunity argument again at a later stage in the proceedings if facts establish Plaintiff's ADA claim does not involve the deprivation of a fundamental right. Having disposed of the School Board's argument, its motion to dismiss is denied.

### C. Count X: False Imprisonment (Aspire)

Turning to the claims against Aspire, Plaintiffs sues for false imprisonment and negligence. (Doc. 24, ¶¶ 161–78.) First, false imprisonment. Under Florida law, false imprisonment "is the unlawful restraint of a person against [her] will, the gist of which action is the unlawful detention of the plaintiff and deprivation of [her] liberty." *Johnson*

---

[3] *See Trianon Park Condo. Ass'n, Inc. v. City of Hialeah*, 468 So. 2d 912 (Fla. 1985) (negligence action); *Jordan v. Nienhuis*, 203 So. 3d 974 (Fla. 5th DCA 2016) (wrongful death action); *Slemp v. City of N. Miami*, 545 So. 2d 256 (Fla. 1989) (negligence action); *Com. Carrier Corp. v. Indian River Cnty.*, 371 So. 2d 1010 (Fla. 1979) (negligence action).

*v. Weiner*, 19 So. 2d 699, 700 (Fla. 1944). "[A] plaintiff alleging false arrest must show the restraint was unreasonable and unwarranted under the circumstances." *Spears v. Albertson's, Inc.*, 848 So. 2d 1176, 1178 (Fla. 1st DCA 2003). But "[w]hether the restraint was unreasonable under the circumstances is a question of fact . . . ." *Id.*

Aspire argues Plaintiffs have failed to state a claim for false imprisonment because they haven't shown S.K.'s restraint was unreasonable or unwarranted. (Doc. 35, pp. 4–5.) But this is a question of fact, not a pleading issue *See Spears*, 848 So. 2d at 1178. Plaintiffs have alleged sufficient facts that could plausibly show S.K.'s detention was unreasonable—specifically holding a nine-year-old child overnight after failing to evaluate her until the next day. (*See* Doc. 24, ¶¶ 46–53.)

Aspire also argues the Complaint does not allege "Aspire failed to act in good faith when providing Baker Act services" to S.K. (Doc. 35, p. 5.) A person is not liable for false imprisonment if she acted in good faith compliance with the Baker Act. *See Giarratano v. Judd*, No. 8-10-CV-2531-T-27TGW, 2012 WL 1191145, at *4 (M.D. Fla. Apr. 10, 2012) (citing Fla. Stat. § 394.459(10)). While Plaintiffs do not use the words "good faith," they plead facts that plausibly allege Aspire did not act in good faith compliance with the Baker Act. Plaintiffs allege Aspire failed to examine S.K. within twelve hours as required by the Baker Act, only evaluating her after her parents threatened to file a police report. (Doc. 1-1, ¶¶ 164, 168); *see* Fla. Stat. § 394.463(2)(g) *cf. Giarratano*, 2012 WL 1191145, at *4 (finding the plaintiff had not alleged lack of good faith where the defendants complied with the Baker Act). So the Court will not dismiss Plaintiffs' false imprisonment claim.

### D. Count XI: Negligence (Aspire)

Aspire also argues the negligence claim against it should be dismissed. (Doc. 35, pp. 5–8.) Under Florida law, negligence has four elements: "(1) the existence of a duty of care, (2) breach of that duty, (3) legal or proximate causation, and (4) actual damages." *Anderson v. Snyder*, 389 F. Supp. 3d 1082, 1090 (S.D. Fla. 2019) (citing *Wallace v. Dean*, 3 So. 3d 1035, 1046 n.18 (Fla. 2009)).

First, Aspire argues Plaintiffs have failed to plead facts to support a negligence claim. (Doc. 35, p. 6.) Plaintiffs allege Aspire owed a duty of care to S.K. when it took custody of her and breached that duty by failing to promptly evaluate her. (Doc. 24, ¶¶ 175–76.) As a result of Aspire's failure, S.K. had to stay overnight in a detention facility and suffered emotional and physical injuries from the stay. (*Id.* ¶¶ 177–78.) So Plaintiffs have sufficiently alleged a negligence claim.

Still, Aspire contends this is essentially a reiteration of Plaintiff's false imprisonment claim so: (1) it fails for the same reasons the false imprisonment claim fails; and (2) it fails because Florida doesn't recognize a claim for negligent commission of an intentional tort. (Doc. 35, pp. 6–9.) But the false imprisonment claim was sufficiently pled. *See supra* Section III.C. And while Florida doesn't recognize a claim for the negligent commission of an intentional tort, Plaintiffs do not allege intentional conduct in their negligence claim. (Doc. 24, ¶¶ 174–78); *cf. Bright v. City of Tampa*, No. 8:16-cv-1035-T-17MAP, 2017 WL 5248450, at *8 (M.D. Fla. May 17, 2017). At this stage, Plaintiffs can "plead inconsistent or alternative theories of relief." *Mancini Enters., Inc. v. Am. Express Co.*, 236 F.R.D 695, 699 (S.D. Fla. 2006).

Last, Aspire argues Plaintiffs' negligence claim is barred by Florida's impact rule. (Doc. 35, p. 7.) Florida's impact rules mandates "that before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact." *R.J. v. Humana Fla., Inc.*, 652 So. 2d 360, 362 (Fla. 1995).

For the negligence claim against Aspire, Plaintiffs allege S.K. suffered both emotional and physical injuries. (Doc. 24, ¶ 124.) But this conclusory reference to physical damages isn't supported by the factual allegations of the Complaint. Plaintiffs allege when S.K. was released from Aspire's care, she had bruises "which were suffered as a result of the physical restraints by School staff and Defendant Cline." (*Id.* ¶ 54.) But Plaintiffs do not allege Aspire employees had physical contact with S.K. beyond her evaluation, which without further details, does not qualify as physical injury under Florida's impact rule. (*Id.* ¶ 53); *see R.J.*, 652 So. 2d at 364. And absent physical damages, emotional injuries alone will not support a negligence claim against Aspire. *See R.J.*, 652 So. 2d at 362. But Plaintiffs appear to be able to allege facts that S.K. was physically injured by Aspire so the Court dismisses the negligence claim without prejudice, giving Plaintiffs leave to amend. (*See* Doc. 45, p. 4.)

### IV.   CONCLUSION

It is **ORDERED AND ADJUDGED:**

1. Defendant's School Board of Orange County, Florida's Dispositive Motion to Dismiss Count III of Plaintiff's Complaint With Prejudice (Doc. 34) is **DENIED**.

2. Defendant Aspire Health Partners Inc.'s Dispositive Motion to Dismiss (Doc. 35) is **GRANTED IN PART AND DENIED IN PART:**

   a. Count XI of Plaintiff's Complaint (Doc. 24, ¶¶ 174–78) is **DISMISSED WITHOUT PREJUDICE**;

   b. In all other respects, the Motion is **DENIED**.

3. By Friday, **February 26, 2021**, Plaintiffs may file an amended complaint to correct the deficiency identified in this Order. Failure to timely file will result in the action proceeding without a negligence claim against Defendant Aspire Health Partners, Inc.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on February 16, 2021.



ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record